# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | |
| | : | **NO.  22-00011** |
| **DONNA FECONDO** | : | |

## AMENDED MEMORANDUM OPINION[1]

**Goldberg, J.**                                                                                    **November 14, 2023**

     This Opinion addresses the sentencing tax loss arising from Defendant Donna Fecondo's plea to two counts of failure to collect and pay over employment taxes (26 U.S.C. § 7202), and four counts of failure to file tax returns (26 U.S.C. § 7203).  The Government and Defendant dispute the tax loss amount that should be used to calculate the range under § 2T4.1 of the Sentencing Guidelines.  While the parties agree that the actual loss on the six charged counts is $599,159, the Government seeks an increase of the total tax loss to $5,077,853 through the inclusion of uncharged, relevant conduct.

     After an evidentiary hearing on this issue and for the following reasons, I agree with the Government's loss analysis and find the tax loss to be $5,077,853.

---

[1]    In calculating the tax loss, my original October 18, 2023 Opinion relied upon USSG § 2T1.1.  This calculation was consistent with both the July 27, 2023 Pre-Sentence Report and the parties' original sentencing memoranda.  During the August 1, 2023 sentencing, however, the parties agreed that no tax loss should be calculated for Counts 3, 4, 5, and 6 (failure to file U.S. income tax returns and failure to file individual income tax returns, both in violation of 26 U.S.C. § 7203).  As such, the only remaining charged conduct for purposes of determining tax loss was failure to collect and pay over employment taxes in violation of 26 U.S.C. § 7202.  Consequently, the relevant Sentencing Guideline for determining tax loss became USSG § 2T1.6.

## I.   FACTUAL BACKGROUND

The following facts are set forth in the Revised Pre-Sentence Report ("PSR")[2] and supplemented by evidence presented on August 1, 2023

Joseph Silvestri & Son, Inc. ("JSSI") was a business operating a mushroom farm, located in Garnet Valley, Pennsylvania.  JSSI was started by Defendant's grandfather, Joseph Silvestri, and was later taken over by his son, Frank Silvestri.  Defendant, who is Frank Silvestri's niece, began working at the farm in the 1980's and, in 1996, became the "Secretary/Treasurer" of JSSI.  That same year, Frank Silvestri executed a Power of Attorney, appointing Defendant as his "Attorney-in-Fact with power to transact any business at all in my name as though I myself were acting."  In August 2010, Frank Silvestri died, leaving most of his estate to Defendant, who then became president of JSSI.  (PSR ¶¶ 7–8.)

At the time of the relevant events, Defendant was the president of JSSI.  As such, she was responsible for withholding JSSI's employees' employment taxes (Federal Insurance Contributions Act ("FICA") taxes plus federal income taxes) "in trust" for the employees, and for remitting these amounts on the employees' behalf to the IRS.  Defendant was also responsible for remitting JSSI's share of FICA taxes.  (Id. ¶¶ 7, 9.)

Agricultural businesses that pay wages to employees, such as JSSI, are required to file an "Employer's Annual Federal Tax Return for Agricultural Employees" (IRS Form 943) to report all of their employees' wages and employment taxes.  An agricultural employer who files Form 943 must pay payroll taxes with each payroll cycle.  As JSSI paid its employees weekly, it was required to electronically deposit its payroll taxes weekly.  (Id. ¶ 10.)

---

[2]    Defendant has lodged several factual objections to the PSR.  I have not included any of the disputed facts in the factual background recitation.

All domestic corporations must also file a "U.S. Corporation Income Tax Return" (IRS Form 1120) annually, unless they are required to file, or elect to file, a special return.  JSSI had not elected to file a special return, and therefore was required to file a corporate income tax return each year as well.  (Id. ¶ 11.)

In 2007 the IRS contacted JSSI regarding its unpaid employment taxes for the tax years 2000 through 2005.  In 2009, Defendant signed an Officer in Compromise ("OIC") on JSSI's behalf, and from May 2009 through April 2014, Defendant made the required monthly payments to the IRS, paying the entire amount due under the OIC.  (Govt. Ex. C.) During the same time period, Defendant filed JSSI's tax returns for agricultural employees for 2010–2012, but never paid any employment taxes for those years.  (PSR ¶ 13.)

In 2017, the IRS contacted Defendant about her failure to file and pay employment taxes. Defendant provided JSSI's federal tax returns for agricultural employees for the tax years 2013, 2014, 2015, and 2016 to the IRS, all signed by Defendant and dated July 23, 2017.  (N.T. 8/1/23, 45–46.)  Defendant represented that she was the president and 100% owner of the company, and that there were no other executives of the company.  Defendant reported that JSSI owed substantial payroll taxes and withheld employment taxes from its employees' wages for tax years 2013–2016 (totaling $1,954,125.54) but failed to pay any over employment taxes to the IRS for those tax years.  JSSI should have remitted $302,261 in employment taxes for tax year 2015, and $296,898 in employment taxes for tax year 2016, but paid nothing.  After the IRS contacted Defendant in 2017 about unpaid taxes, Defendant provided the IRS with JSSI's financial information and sought an installment agreement for the unpaid taxes.  (PSR ¶¶ 14–16.)

During calendar years 2015 and 2016, JSSI had gross receipts, and, as such, Defendant was required to file an income tax return on behalf of JSSI but failed to do so.  Indeed, JSSI did not file

another corporate income tax return after tax year 2010. (Id. ¶¶ 20–22.) This conduct comprises the basis for Counts I and II.

For calendar years 2015 and 2016, Defendant received gross income of $108,000 and $104,000, respectively, in wages from JSSI. She was required to file an individual income tax return for each year but failed to do so. Defendant has not filed an individual tax return since tax year 2008. (Id. ¶¶ 23–25.) This conduct comprises the basis for Counts III and IV.

In December 2017, Defendant was interviewed by a special agent with the IRS-Criminal Investigations Division. She stated that she was the only signer on JSSI's operating and payroll accounts, and she determined which bills to pay and signed all checks. She also indicated that she was responsible for making federal payroll tax deposits and that she was familiar with the Electronic Federal Tax Pay Payment System. Upon further questioning, Defendant stated that, under the 2009 OIC, she knew she was required to stay current by making payroll tax deposits and filing payroll tax returns timely but stopped making employment tax payments due to personal and financial issues. She also stopped filing the annual federal tax returns for agricultural employees due to emotional issues related to her uncle's death and her own divorce. Defendant admitted that she could not recall the last time she filed an individual income tax return but believed it was in 2013. IRS records reveal that she has not filed an individual income tax return since 2008. (Id. ¶ 28–30.) This conduct comprises the basis for Counts V and VII.

## II.    PROCEDURAL HISTORY

On January 13, 2022, a grand jury returned a six-count Indictment charging Defendant with failure to collect and pay over employment taxes in violation of 26 U.S.C. § 7202 (Counts I and II), and failure to file returns in violation of 26 U.S.C. § 7203 (Counts III–VI). On May 26, 2022, Defendant pled guilty to all six counts of the Indictment.

On August 1, 2023, I held an evidentiary hearing, wherein the IRS Agent in charge of the investigation, Allison Lareau, testified about loss calculations.  I then directed the parties to submit supplemental briefing on the issue of the tax loss amount.

## III.    DISCUSSION

"For tax offenses, a defendant's base offense level is determined by the tax loss."  United v. Poltonowicz, 353 F. App'x 690, 693 (3d Cir. 2009) (quoting United States v. Gricco, 277 F.3d 339, 355 (3d Cir. 2002).  United States Sentencing Guideline ("USSG") § 2T1.6 provides that the tax loss "correspond[s] to the tax not collected or accounted for and paid over." USSG § 2T1.6

Here, the undisputed tax loss amount from the charged conduct is $599,159, consisting of Defendant's failure to pay over employee taxes on behalf of JSSI for tax years 2015 to 2016 (set forth in table below).  To that amount, the Government seeks to add the following relevant conduct as part of the tax loss for Counts I and II:[3]

| Year | Loss Amount from *Charged* Conduct | Loss Amount from Relevant Conduct | Total Owed |
|------|------|------|------|
| 2015 | $302,261.46 for failure to pay over employee taxes *Undisputed by Defendant* | $174,112.00 in the employer owed portion of taxes | $476,373.46 |
| 2016 | $296,898.48 for failure to pay over employee taxes *Undisputed by Defendant* | $166,702.50 in the employer owed portion of taxes | $463,600.98 |
| TOTALS | $599,159.94 | $340,814.50 | **$939,974.44** |

The Government also seeks to add Defendant's failure to pay employment taxes (both employer and employee portions) for 2013 and 2014, which was during the investigative period.

| Year | Trust Fund Taxes | Employer Portion | Total Owed |
|------|------|------|------|
| 2013 | $337,541.50 | $184,048.60 | $521,590.10 |
| 2014 | $318,367.50 | $174,213.06 | $492,580.56 |
| TOTALS | $655,909.00 | $358,261.66 | **$1,014,170.66** |

---

[3]    The Government attributes no tax loss for Defendant's conduct in Counts 3 through 6.

Additionally, the Government seeks to add losses from Defendant's failure to remit JSSI's

employment taxes from 2009 through 2012 (prior to the investigative period).

| Year | Trust Fund Taxes | Employer Portion | Total Owed |
|---|---|---|---|
| 2009 | $359,118.50 | $195,100.39 | $554,218.89<br>(-$214,635.59 payment)<br>= $339,583.30 |
| 2010 | $357,692.00 | $193,523.67 | $551,215.67 |
| 2011 | $317,510.50 | $158,411.19 | $475,921.69 |
| 2012 | $322,325 | $167,237.53 | $489,562.53 |
| **TOTALS** | $1,356,646.00 | $714,002.78 | **$1,856,283.19** |

Plus, the Government seeks to add losses from Defendant's failure to pay over employment

taxes for 2017 through 2019 (after the time period in the Indictment).

| Year | Trust Fund Taxes | Employer Portion | Total Owed |
|---|---|---|---|
| 2017 | $319,062 | $172,766 | $491,828<br>(-$135,756 payment)<br>= $356,072 |
| 2018 | $312,174 | $185,327 | $497,501 |
| 2019 | $166,699 | $94,978 | $261,677 |
|  |  | **TOTAL** | **$1,115,250** |

Finally, the Government alleges that Defendant did not pay employment taxes for her other

business—Twinkle Resale Boutique ("Twinkle")—for tax years 2015 through 2022. According

to the Government, Defendant formed Twinkle while President of JSSI and, in 2015 and 2016,

transferred a total of $106,790 of JSSI profits to Twinkle. Defendant filed quarterly employment

tax returns for Twinkle for only three quarters (3rd and 4th quarters 2015 and first quarter 2020)

and never paid any employment taxes to the IRS for this business.

|  | Wages | Trust Fund | Employer | Total Tax | Payments | Due |
|---|---|---|---|---|---|---|
| 2015 | $48,569.00 | $6,040.00 | $3,707.00 | $9,747.00 | 0.00 | $9,747.00 |
| 2016 | $89,940.43 | $13,409.43 | $6,880.43 | $9,747.00 | 0.00 | $9,747.00 |
| 2017 | $110,679.00 | $19,106.00 | $11,341.00 | $30,447.00 | 0.00 | $30,447.00 |
| 2018 | $107,786.00 | $14,762.00 | $9,481.00 | $24,243.00 | 0.00 | $24,243.00 |
| 2019 | $113,041.00 | $14,214.00 | $8,639.00 | $22,853.00 | 0.00 | $22,853.00 |
| 2020 | $43,778.00 | $8,016.00 | $3,340.00 | $11,356.00 | 0.00 | $11,356.00 |
| 2021 | $79,999.00 | $15,576.00 | $6,115.00 | $21,691.00 | 0.00 | $21,691.00 |
| 2022 | $79,275.00 | $16,026.00 | $6,065.00 | $22,091.00 | 0.00 | $22,091.00 |
| **Total** | $673,067.43 | $107,149.43 | $55,568.43 | $152,175.00 | 0.00 | **$152,175.00** |

In sum, the total of all charged and relevant conduct alleged by the Government is as follows:

| YEARS | CONDUCT | TAX LOSS |
|---|---|---|
| 2015-2016 | **Charged conduct** – JSSI's unpaid employment taxes (employee portion) Plus **Relevant conduct** – JSSI's unpaid employment taxes (employer portion) | $939,974 |
| 2009–2014 | **Relevant conduct** – JSSI's unpaid employment taxes (employer and employee portion) | $2,870,454 |
| 2017–2019 | **Relevant conduct** – JSSI's unpaid employment taxes (employer and employee portion) | $1,115,250 |
| 2015–2022 | **Relevant conduct** – Twinkle's unpaid employment taxes | $152,175 |
|  | **TOTAL** | **$5,077,853** |

Defendant objects to the inclusion of any relevant conduct on several grounds.  First, she asserts that the Government's inclusion of certain relevant conduct rests on a parenthetical example in the Commentary to U.S. Sentencing Guideline § 1B1.3 (defining "relevant conduct"). Defendant claims that, contrary to precedent from the United States Supreme Court and the United States Court of Appeals for the Third Circuit, that Commentary improperly expands the Guidelines definition of "relevant conduct."  Second, Defendant posits that the United States Attorney's office lacks jurisdiction to prosecute criminal cases arising under the IRS Code absent approval by the Tax Division.  Third, she claims that the Due Process Clause and jury trial guarantees of the Fifth and Sixth Amendments prohibit imposing sentencing enhancements based on conduct which was

never charged in the indictment and never proven to a jury beyond a reasonable doubt.  Finally, she argues that, even if all of the foregoing objections are overruled, the Government has failed to prove the essential elements of the crimes it seeks to include as "relevant conduct."

**A.** **Whether the Government Has Improperly Expanded the Guidelines Through Commentary**

Defendant first contends that the Government's inclusion of relevant conduct is improperly premised entirely on the Commentary to the Guidelines.  According to Defendant, the Third Circuit has explicitly stated that "[i]f the Sentencing Commission's commentary sweeps more broadly than the plain language of the guideline it interprets, we must not reflexively defer." United States v. Banks, 55 F.4th 246, 256 (3d Cir. 2022).  Because, as Defendant argues, the Commentary to § 1B1.3 expands what constitutes relevant conduct for purposes of determining the tax loss, any inclusion of relevant conduct based on that Commentary is improper.

Defendant's argument is misplaced.  USSG § 2T1.6 is the controlling guideline provision to calculate tax loss for purposes of sentencing.  The Guideline directs that the base level offense depends on the tax loss and the corresponding offense level as set forth in the Tax Table at § 2T4.1.

For purposes of determining the tax loss, however, a district court must also look to USSG § 1B1.3, entitled "Relevant Conduct," which provides:

> **(a) Chapters Two (Offense Conduct) and Three (Adjustments).**
> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> **(1)(A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

8

**(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

> **(i)** within the scope of the jointly undertaken criminal activity,
> **(ii)** in furtherance of that criminal activity, and
> **(iii)** reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

**(2)** solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

**(3)** all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

**(4)** any other information specified in the applicable guideline.

USSG § 1B1.3 (emphasis added).

Because there is more than one base offense level for a violation of 26 U.S.C. § 7202 (willful failure to collect or pay over tax), the Guidelines provision of § 1B1.3 thus requires consideration of "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of convictions . . .;" and "(2) solely with respect to offenses of a character for which 3D1.2 would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) . . . that were part of the same course of conduct . . . as the offense of conviction." USSG § 1B1.3. Section 3D1.2—as referenced in §

1B1.3—explicitly notes that "[o]ffenses covered by [USSG. § 2T1.6] are to be grouped under this subsection."  USSG § 3D1.2.

Notwithstanding this clear authority for consideration of relevant conduct beyond the charged conduct, Defendant contends that the Government improperly relies on a parenthetical example in the Commentary to § 1B1.3.  That Commentary states that, in defining the "same course of conduct" on which the tax loss must be based, the "nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals.)"   USSG § 1B1.3, app. n.5(B)(ii).  Defendant then argues that the Third Circuit has rejected any use of the Sentencing Commission's Commentary to expand the language of the actual Guideline.  United States v. Banks, 55 F.4th 246, 255–59 (3d Cir. 2022) (holding that because the commentary expands the definition of "loss" in § 2B1.1, the commentary would be accorded no weight).

I disagree with Defendant's argument for several reasons.  First, the Government does not premise its consideration of relevant conduct on only the Commentary but rather on the language of § 1B1.3 itself.  That section states that the base level offense shall be determined on "all acts and omissions [committed by Defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction."  Id. § 1B1.3(a)(2).  The Third Circuit has emphasized that tax loss must be determined by consideration of both the loss associated with the charged conduct *and* the loss arising from relevant conduct.  See United States v. Lynch, 735 F. App'x 780, 792–93 (3d Cir. 2018) (affirming district court's considering of defendant's failure to pay over taxes to the IRS across multiple years, beginning prior to the quarters for which Defendant was convicted and continuing after the indictment period); see also United States. v. Poltonowicz,

353 F. App'x 690, 694 (3d Cir. 2009) (including relevant conduct in tax loss calculation beyond that resulting from the charged conduct); United States v. Maken, 510 F.3d 654, 657 (6th Cir. 2007) (holding that in defendant's sentencing for income tax evasion and willfully failing to file a federal income tax return, the losses caused by the defendant's failure to pay state income and sales taxes constituted relevant conduct for purposes of determination of his sentencing guidelines offense level where defendant's failure to file both federal and state tax returns constituted the same modus operandi); United States v. Bove, 155 F.3d 44, 47–48 (2d Cir. 1998) (noting that the inclusion of non-charged relevant criminal conduct in the tax loss calculation used to set the base offense level is supported by caselaw in other Circuits); United States v. Meek, 998 F.2d 776, 781 (10th Cir. 1993) (holding that USSG § 1B1.3(a)(2) permits the sentencing court to consider conduct beyond the offense of conviction that was part of the same course of conduct as this offense.).[4]

Moreover, even if the Government had placed more reliance on the Commentary, the Third Circuit's decision in Banks does not preclude such reliance.  Banks involved wire fraud, not tax fraud.  Id. at 251.  The Third Circuit construed the Guideline provisions for determining loss (USSG § 2B1.1) and noted that those provisions used only the term "loss" without mention of "actual" versus "intended."  Id. at 257.  The Commentary to that section, however, referred to both "actual" and "intended" loss, allowing both types of loss to be included in the loss calculation. The Third Circuit, however, found that the ordinary meaning of "loss" in the context of § 2B1.1 was "actual loss"—a definition confirmed by reference to Webster's Dictionary.  As such, any

---

[4]     While Poltonowicz, Maken, Bove, and Meek all involved tax loss under § 2T1.1 as opposed to § 2T1.6, they are instructive as to the interpretation of relevant conduct under USSG § 1B1.3.

subsequent use of "intended" loss in the Commentary constituted an improper expansion of the word's definition.  Id. at 257–58.  The Court thus accorded the Commentary no weight.  Id.

More recently, in United States v. Mercado, ___ F.4ᵗʰ ___, 2023 WL 5539264, (3d Cir. Aug. 29, 2023), the Third Circuit held that the Sentencing Commission's interpretation of the Guidelines, as set forth in the Commentary, is entitled to deference so long as it does not improperly expand the Guideline and remains within the outer bounds of permissible interpretation.  Id. at *3.  The Commentary here meets that test.  USSG § 1B1.3 explicitly refers to "all acts and omissions . . that were part of the same course of conduct . . . as the offense of conviction."  The Commentary does not expand that language but rather provides an example in which the language applies.  Id., cmt. n.5(B)(ii).  Thus, the Government's reference to the Commentary, while illustrative, does not change the determination of what constitutes relevant conduct here.

## B. Whether the United States Attorney's Office Lacks Jurisdiction to Prosecute Criminal Cases Arising under the IRS Code Absent Approval by the Tax Division

Defendant next argues that the United States Attorney lacks jurisdiction to prosecute the uncharged alleged violations of the IRS Code for the tax years that are not part of the Indictment.  According to Defendant, 28 C.F.R. § 0.70(a) gives sole jurisdiction over the prosecution of cases arising under the IRS Code to the Tax Division.  Under Section 6-4.200 of the U.S. Department of Justice Manual, "[t]he Tax Division must approve any and all criminal charges that a United States Attorney's Office intends to bring against a defendant for conduct arising under the internal revenue laws, regardless of which criminal statute(s) the United States Attorney's Office proposes to use in charging the defendant."  See U.S. Dept. of Justice Manual 6-4.200.  As the Justice Department did not have approval to prosecute the acts and years that constitute "relevant conduct," Defendant claims that the Government cannot circumvent the jurisdictional

requirements of 28 C.F.R. § 0.70(a) by including such conduct for purposes of determining the base offense level.

Section 0.70(a) references only the IRS's approval of *criminal charges* that the United States Attorney's Office seeks to bring.  As discussed above, however, Sentencing Guideline § 1B1.3 directs sentencing courts to consider "all relevant conduct" when calculating the base level offense, which "clearly encompasses both charged and non-charged conduct."  Bove, 155 F.3d at 47–48.  Defendant cites to no authority to suggest that Section 0.70 cabins a sentencing court's ability to consider uncharged conduct when determining a defendant's base level offense.  Absent such authority, I decline to interpret this regulation in a manner that conflicts with the Sentencing Guidelines.

### C.   Whether the Due Process Clause and Jury Trial Guarantees of the Fifth and Sixth Amendments Prohibit Consideration of Uncharged Relevant Conduct

Defendant next argues that the Due Process clause and jury trial guarantees of the Fifth and Sixth Amendments prohibit imposing sentencing enhancements based on conduct which was never charged in an indictment.  She contends that the Government seeks to increase the actual tax loss of $599,159 to $5,077,853, resulting in a four-level offense level increase, without ever proving that conduct to a jury beyond a reasonable doubt.  Citing to Supreme Court dissenting opinions, Defendant asserts that the Government's attempt to use uncharged conduct "exemplifies the constitutional infirmities of allowing judicial fact-finding to increase the severity of a defendant's sentencing guideline range."  (Def.'s Suppl. Sentencing Mem., ECF No. 42, p. 8.)

In United States v. Booker, 543 U.S. 220 (2005), the United States Supreme Court held that the mandatory enhancement of a sentence under the Sentencing Guidelines, based on facts (other than prior convictions) not admitted by the defendant or found by a jury, violates the Sixth Amendment.  Id. at 244.  The Court remedied this concern by making the Sentencing Guidelines

"effectively advisory."  United States v. Vasquez, 176 F. App'x 292, 294 (3d Cir. 2006) (citing

Booker).  After Booker, the sentencing process involves two steps: (1) a calculation of the correct

guideline range in the same manner done before Booker, and (2) consideration of the statutory

factors listed in 18 U.S.C. § 3553(a) to determine whether to sentence within the advisory

guidelines range.  Id. at 244–45.  Under the second step, "[m]eaningful consideration of the §

3553(a) factors necessarily includes the correct calculation of the applicable guideline range."  Id.

at 245.

　　　　Notably, Booker did not overrule United States v. Watts, 519 U.S. 148 (1997), in which

the Supreme Court explicitly held that a sentencing court can constitutionally consider conduct

underlying an acquitted or uncharged offense so long as that conduct has been proved by a

preponderance of the evidence.  Id. at 157.  "Because Booker did not change the manner in which

the correct guidelines range is calculated, but only the weight of the correctly calculated range in

the final determination of the appropriation sentence," it would be judicial error to not consider

evidence of relevant conduct.  Vasquez, 176 F. App'x at 295.  In other words, as long as the

sentencing court treats the resulting Guidelines range as advisory, rather than mandatory,

consideration of a defendant's relevant conduct does not violate the Constitution.  United States v.

Rita, 551 U.S. 338, 349–51 (2007) (holding that the judicial fact-finding necessary to calculate the

advisory Guidelines range does not violate the Sixth Amendment).[5]

---

[5]　　Defendant also cites to Apprendi v. New Jersey, 530 U.S. 466 (2000) for the proposition that any
fact that increases the penalty to which a defendant is exposed constitutes an element of a crime and must
be found by a jury, not a judge.  Id. at 483–84.  Apprendi, however, was concerned with statutory
maximums.  See United States v. Ali, 508 F.3d 136, 146 (3d Cir. 2007) ("After Booker, the statutory
maximum to which Apprendi and Blakely refer is the maximum punishment in the U.S. Code for a certain
crime.").  Pursuant to USSG § 5G1.1(c), any application of the relevant conduct provision of § 1B2.3 may
not exceed the statutory maximum for the underlying offense of conviction, meaning that Apprendi is not
implicated.

**D.  Whether the Government Has Met Its Burden of Proving the Essential Elements of the Crimes It Seeks to Include as "Relevant Conduct"**

Defendant's final argument contends that even if I reject the foregoing objections to the inclusion of uncharged conduct, the Government has failed to prove the essential elements of the crimes it seeks to include as relevant conduct.  The Guidelines' Commentary provides a three-prong test that the sentencing court must look to determine whether there is relevant conduct: (1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses.  United States v. Wilson, 106 F.3d 1140, 1143 (3d Cir. 1997) (quoting USSG § 1B1.3, cmt. n.9(B)).  Importantly, the test is a sliding scale, so "[e]ven if one factor is absent," relevant conduct may be found where at least one other factor is strong.  Id.  The three-prong test "is especially important in cases where the extraneous conduct exists in 'discrete, identifiable units' apart from the conduct for which the defendant is convicted."  United States v. Kulick, 629 F.3d 165, 171 (3d Cir. 2010) (quotations omitted).  This factual determination is for the District Court to determine in the first instance, and the appellate court reviews for clear error.  United States v. Harrison, 357 F.3d 314, 317 (3d Cir. 2004), vacated on other grounds, 543 U.S. 1102 (2005).

The Government bears the burden of proving relevant conduct by a preponderance of the evidence.  USSG § 6A1.3, cmt.; United States v. Watts, 519 U.S. 148, 156 (1997).  Similarly, loss amount is a sentencing fact, which need only be found by a preponderance of the evidence, and the court need only make a reasonable estimate of the loss.  United States v. Ali, 508 F.3d 136, 145–46 (3d Cir. 2007); United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007).[6]  Whether conduct is "relevant conduct" under USSG § 1B1.3 is a question of law, not a discretionary determination.

---

[6]     Defendant argues that because all of the alleged conduct that the Government seeks to include is uncharged conduct that is separate and apart from the offense of conviction and results in an "extremely

Defendant offers several arguments as to why the Government has not proven all of the relevant conduct it seeks to include by a preponderance of the evidence.

      1.   Conduct Beyond the Statute of Limitations

Defendant first argues that including any loss amounts for the years 2009 through 2014 is improper because those years are beyond the statute of limitations.  Every Circuit to consider the issue, however, has held that a district court may consider criminal conduct that occurred outside of the statute of limitations period as relevant conduct for sentencing purposes.  See United States v. Stephens, 198 F.3d 389, 390–91 (3d Cir. 1999) (agreeing with the "[s]even other courts of appeal [that] have held that conduct that is not chargeable because the statute of limitations has expired may be considered in determining the appropriate sentence under the Guidelines") (citing United States v. Silkowski, 32 F.3d 682, 688 (2nd Cir. 1994); United States v. Lokey, 945 F.2d 825, 840 (5th Cir. 1991); United States v. Pierce, 17 F.3d 146, 150 (6th Cir. 1994); United States v. Neighbors, 23 F.3d 306, 311 (10th Cir. 1994); U.S. v. Behr, 93 F.3d 764, 766 (11th Cir. 1996)).

      2.   Conduct from the Post-Indictment Years of 2017 Through 2019

Defendant next contends that the Government has not proven that the post-indictment conduct during the years of 2017 through 2019 constitute relevant conduct because it is not part of a common scheme or plan.

In United States v. Lynch, 735 F. App'x 780 (3d Cir. 2018), the defendant was indicted for failing to pay payroll trust fund taxes from quarters ending in 2008 through 2010, and later indicted

---

disproportionate effect" upon the sentence enhancement, a "clear and convincing" standard must apply. (Def.'s Suppl. Sentencing Mem., ECF No. 42, pp. 8–9.)

    In United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), the Third Circuit held that sentencing enhancements that "can fairly be characterized as a 'tail which wags the dog of the substantive offense' must be proved by 'clear and convincing evidence.'"  Id. at 1100-001.  In subsequent holdings, however, the Third Circuit has found that Kikumura is no longer good law and has reaffirmed the preponderance of the evidence standard.  United States v. Fisher, 502 F.3d 293, 302–06 (3d Cir. 2007) and United States v. Grier, 475 F.3d 556 (3d Cir. 2007).

for quarters ending in 2011 through 2015.  Id. at 785.  Ultimately, the defendant was convicted on

counts from the second quarter of 2012 and later (save the second quarter of 2014).  Id.  The district

court nonetheless assessed "uncharged" conduct occurring after the indictment period.  Id.  On

appeal, the Third Circuit noted that "[i]n determining the total tax loss attributable to the offense .

. . all conduct violating the tax laws should be considered as part of the same course of conduct."

Ultimately, it upheld the district court's reliance on uncharged and acquitted conduct.  Id. at 792;

see also United States v. Harris, 796 F. App'x 126, 130 (3d Cir. 2019) (including post-indictment

conduct as part of relevant conduct).

The case before me is analogous.  Although the Government charged Defendant's failure

to pay over employee payroll taxes only during 2015 and 2016, it proved, by a preponderance of

the evidence, that Defendant engaged in virtually identical conduct both prior to the investigative

period and continuing after the Indictment.  Accordingly, I find that the 2017–2019 conduct

properly counts as relevant conduct for purposes of determining the tax loss.

### 3.  Willfulness

Defendant next asserts that the only conduct that can be included in tax loss is conduct

violating the tax laws, which means that the Government must prove that the relevant conduct in

fact constituted a crime.  An essential element of the crime Failure to Collect and Pay Over

Employment Taxes, in violation of 26 U.S.C. § 7202, is "willfulness."  Absent some demonstration

that the tax money owed could have been paid and instead was spent on personal expenses,

Defendant contends that there is no showing of willfulness.

Willfulness in a tax evasion case is "a voluntary, intentional violation of a known legal

duty."  Cheek v. United States, 498 U.S. 192, 201 (1991) (citations omitted).  "Where a defendant

proves that he had a good faith belief that he was not violating the tax code, regardless of whether

17

that belief was objectively reasonable, he has established that he did not act willfully."  United

States v. DeMuro, 677 F.3d 550, 557 (3d Cir. 2012).

"[W]illfulness may be inferred from a pattern of conduct, 'the likely effect of which would

be to mislead or conceal.'"  U.S. v. McGill, 964 F.2d 222, 237 (3d Cir. 1992) (quoting Spies v.

United States, 317 U.S. 492, 499 (1943)). The government may prove willfulness through direct

or circumstantial evidence.  United States v. Voigt, 89 F.3d 1050, 1090 (3d Cir. 1996).  The Third

Circuit has found the following types of evidence to be suggestive of willfulness:  a defendant

being told by the IRS that taxes were unpaid and failure to pay subjected him to criminal liability;

keeping a double set of books; making false entries or alterations in accounting books; concealing

assets or covering up sources of income; paying off a substantial portion of the unpaid taxes shortly

after hearing defendant was the subject of a grand jury investigation; shifting payment structures

and maintaining low account balances to avoid IRS levies; directing payments to employees,

creditors and himself while failing to pay the overdue taxes; spending while taxes are due; a

defendant's awareness of tax improprieties in his conduct; and altering methods of compensation

to defeat a levy.  DeMuro, 677 F.3d at 557–58; United States v. Lynch, 735 F. App'x 780, 789–

90 (3d Cir. 2018) (citing cases); United States v. Ringwalt, 213 F. Supp. 2d 499, 504–05 (E.D. Pa.

2002).

Here, the Government cites to the following evidence of willfulness:

- Defendant began working at JSSI in the 1980's, and was given Power of Attorney to transact all business of JSSI in 1996;

- In 2004, when an IRS Collection Officer went to JSSI to discuss its unpaid taxes for 2000-2005, Defendant told the Collection Officer that she would hire a lawyer and "tie this up for years."  She eventually hired Joseph Cipolla, a tax professional to deal with the IRS. (N.T. 52–57.)

- In a 2008 letter to the IRS, Cipolla told the IRS that "only [Defendant] is a responsible officer."  (N.T. 56–57.)

- During IRS negotiations in 2008, Defendant signed an IRS Proposed Assessment of Trust Fund Recovery Penalty, accepting responsibility for unpaid taxes.  (N.T. 55–57; Govt. Ex. C.)

- Thereafter, in 2009, Defendant signed an Officer in Compromise ("OIC") with the IRS on behalf of JSSI, agreeing that JSSI would pay its unpaid 2000–2005 taxes over the next seventy-five months.  She made required monthly payments to the IRS from 2009 through 2014.  (N.T. 57.)

- In 2010, Defendant became President and 100% owner of JSSI.  From 2009 through 2014, Defendant timely filed JSSI's Forms 943 but made no tax payments for any of those years.  (N.T. 44; Govt. Ex. G.)

- In 2015, Defendant started a new business, Twinkle Resale Boutique, while still operating JSSI.  The IRS sent Defendant IRS Notice SS4, which provided her with Twinkle's Employer Identification Number, and advised her that she was required to file payroll tax returns.  (Govt. Ex. B, p. 1.)  Defendant never filed any tax returns or paid any employees despite having W-2 employees from whom she withheld payroll taxes.  (N.T. 49.)

- In July 2017, the IRS contacted Defendant about JSSI's delinquent taxes.  Defendant filed Forms 943 for 2013 through 2016 but made no tax payments for any of those years.  (Govt. Ex. G.)

- IRS Agent Lareau interviewed Defendant in 2017, and Defendant stated that she was the person at JSSI responsible for making the payroll tax deposits and that she was familiar with the Electronic Federal Tax Payment System, used by employers to make payroll tax deposits with the IRS.  (N.T. 60–61.)

- According to Agent Lareau's interview with Mr. Cipolla, Defendant was the individual running the financial part of JSSI's business.  (N.T. 133–34.)

In an effort to rebut this circumstantial evidence of willfulness, Defendant claims that the Government has not proven that Defendant used any of the money owed by JSSI for her own personal use during the period of time from 2009–2014, and 2017–2019.  She further asserts that she faced significant personal and business struggles with the business, which had millions of dollars in liens against it, leaving her and JSSI with no money with which to pay the taxes. Specifically, she contends that JSSI had operating losses from 2009–2019 of anywhere from $600,000 to $1.3 million and, although JSSI had buildings and equipment, sale of these items

would have deleted any potential source of future income.  As such, Defendant contends that "her failure to pay (in all uncharged non-Indictment years) cannot be deemed to be 'willful.'"  (Def.'s Supplemental Sentencing Mem. (ECF No. 42) p. 10.)

Such an argument does not negate the Government's showing of willfulness.  IRS Agent Lareau testified at the evidentiary hearing that payroll taxes were legally to be paid on a weekly basis, on the same schedule as payroll itself was processed.  (N.T. 43.)  Thus, JSSI's ability to pay had to be assessed on a weekly basis.[7]  During this time period, however, Defendant chose to fund scholarships to the Salesianum School, provide a corporate sponsorship to the Delaware Wrestling Alliance, pay funds for a "Sandy Luna Lopez" to Immaculata University, transfer money in the form of "loans" to a consignment shop owned by Defendant, buy Eagles tickets for clients, and make gifts to employees.  (Govt. Ex. E; N.T. 66–68.)  While Defendant contends that all of these items were corporate expenditures and not personal use, resolution of that dispute is not relevant. The fact remains that despite owing thousands to the IRS, Defendant chose to use JSSI's funds for purposes other than satisfaction of her debt to the IRS.  See Greenberg v. United States, 46 F.3d 239, 244 (3d Cir. 1994) ("[W]illfulness is a voluntary, conscious and intentional decision to prefer other creditors over the Government." (internal citations omitted)).

It is also difficult to square Defendant's admission in her guilty plea that she acted willfully in failing to pay taxes in 2015 and 2016 with her current claims that she did not act willfully in failing to pay taxes in 2009 through 2012 or 2017 through 2019.  Indeed, Defendant was aware of her tax obligations through repeated communications with the IRS, yet she failed to pay any payroll

---

[7]     Defendant attaches Profit & Loss Statements that purport to show that, from 2009–2019, JSSI had operating losses in the hundreds of thousands of dollars each year.  This evidence fails to demonstrate that, on a weekly basis, JSSI could not have paid the requisite payroll taxes.  It also fails to explain what JSSI did with the employee-portion of the payroll taxes that were withheld from employees' paychecks and were to be held in trust for payment over to the IRS.

taxes or file any tax forms during this time period.  Accordingly, I conclude that the Government has proven, by a preponderance of the evidence, that Defendant acted willfully during the period of the relevant conduct.

### 4.   Conduct Related to Twinkle Boutique

Finally, Defendant challenges the inclusion of tax loss for any conduct related to Defendant's failure to pay payroll taxes for Twinkle Resale Boutique ("Twinkle") for tax years 2015 through 2022.  Specifically, Defendant started Twinkle, a consignment shop business for women's clothing, in 2015.  According to the PSR and the Government, Defendant transferred more than $106,790 from JSSI's accounts to Twinkle.  During the entire period from the opening date in 2015 to 2022, Defendant never paid any payroll taxes for Twinkle.  The Government now claims that the tax loss from that failure—a total of $152,175—is relevant conduct and must be included in the tax loss.

As noted above, for acts to qualify as relevant conduct, and therefore be attributable to a defendant for sentencing purposes under § 1B1.3(a)(2), three conditions must be met: (1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) ("all acts and omissions committed . . . by the defendant"); (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been "part of the same course of conduct or common scheme or plan" under § 1B1.3(a)(2).  In order to determine whether offenses are part of the same course of conduct, and thus relevant conduct, the sentencing court must look to the temporal proximity between the two offenses, the similarity of the offenses, and the regularity of the offenses.  United States v. Wilson, 106 F.3d 1140, 1143 (3d Cir. 1997) (quoting § 1B1.3, cmt. n. 9(B)).

Here, the IRS directly notified Defendant of her obligation to pay payroll taxes on behalf of Twinkle.  (Govt. Ex. B.)  Using the W2 forms of Twinkle's employees, the Government

calculated the employee payroll taxes owed by Twinkle to the IRS and determined that Defendant never paid any payroll taxes at all for Twinkle up to the present.  (N.T. 48.)  This conduct was perpetrated by Defendant, as owner of Twinkle, in identical fashion to the conduct related to JSSI, where Defendant was also the owner.  Moreover, the Twinkle conduct and the charged conduct were temporally proximate, with overlapping conduct in 2015.  And, it is undisputed that Defendant actually took $106,790 from JSSI's funds—money which could have been used to satisfy JSSI's own tax obligations—and transferred it to Twinkle without ever paying any taxes on behalf of Twinkle.  In short, Defendant's failure to pay taxes for Twinkle constituted continuing conduct in Defendant's almost decade-longer refusal to pay payroll taxes for any business for which she was responsible.  While Defendant objects to the inclusion of these acts as relevant conduct, Defendant has not pointed to any evidence showing that the conduct is "clearly unrelated."  Accordingly, I will include this amount in the tax loss.

## III.    CONCLUSION AS TO TAX LOSS

As noted above, the Government bears the burden of proving relevant conduct by a preponderance of the evidence.  I find that the Government has demonstrated that all of the claimed relevant conduct—Defendant's nonpayment of payroll taxes for both JSSI and Twinkle over the course of multiple years—is part of the same course of conduct or scheme as the charged offenses involving Defendant's failure to pay over the employee portion of payroll taxes owed by JSSI in tax years 2015 and 2016.  Accordingly, for purposes of sentencing, I find the tax loss to be $5,077,853.

An appropriate Order follows.